IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

OREGON LABORERS EMPLOYERS HEALTH
AND WELFARE TRUST FUND, OREGON
LABORERS EMPLOYERS PENSION TRUST
FUND, OREGON & SOUTHERN IDAHO
LABORERS-EMPLOYERS TRAINING TRUST
FUND, OREGON LABORERS EMPLOYERS
COOPERATION & EDUCATION TRUST,
PREVAILING WAGE LAW ENFORCEMENT
TRUST, CONTRACT ADMINISTRATION FUND,
and CONSTRUCTION INDUSTRY DRUG FREE
WORKPLACE PROGRAM TRUST,

        Plaintiffs,

                                     CV 11-26-PK

                                     FINDINGS AND
v.                                  RECOMMENDATION

TIMOTHY COVINGTON,

        Defendant.

PAPAK, Magistrate Judge:

        Plaintiffs Oregon Laborers-Employers Health & Welfare Trust Fund, Oregon Laborers-

Employers Pension Trust Fund, Oregon & Southern Idaho Laborers-Employers Training Trust

Fund, Oregon Laborers-Employers Cooperation & Education Trust, Prevailing Wage Law

Enforcement Trust, Contract Administration Fund, and Construction Industry Drug Free

Page 1 - FINDINGS AND RECOMMENDATION

Workplace Program Trust, each an ERISA trust responsible for collecting and administering

contributions by employers for medical care, pensions, training, vacation, and related matters on

behalf of Oregon laborers, filed this action against defendant Timothy Covington on January 7,

2011. Covington is the president and sole shareholder of A.S.A.P. Flagging & Traffic Control,

Inc. ("ASAP"). Plaintiffs have already obtained a money judgment against ASAP for unpaid

fringe benefit contributions, and that judgment remains unpaid. Plaintiffs bring the action now

before the court to pierce ASAP's corporate veil and obtain a finding that Covington is personally

liable on the already-obtained money judgment against ASAP, and, in addition, to seek recovery

against Covington personally under Or. Rev. Stat. 30.701 as a maker of dishonored checks.

      For the reasons set forth below, I find that this court lacks subject-matter jurisdiction over

plaintiffs' claims. In consequence, I recommend that plaintiffs' claims be dismissed for lack of

subject-matter jurisdiction.

## LEGAL STANDARD

      The federal courts are courts of limited jurisdiction. *See, e.g.*, *Exxon Mobil Corp. v.*

*Allapattah Servs.*, 545 U.S. 546, 552 (2005), *citing Kokkonen v. Guardian Life Ins. Co. of*

*America*, 511 U.S. 375, 377 (1994). As such, the courts presume that causes of action "lie[]

outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party

asserting jurisdiction." *Kokkonen*, 511 U.S. at 377; *see also, e.g.*, *Vacek v. United States Postal*

*Serv.*, 447 F.3d 1248, 1250 (9th Cir. 2006).

      A court may raise the issue of subject-matter jurisdiction at any time, *sua sponte*. *See*

*U.S. Catholic Conference v. Abortion Rights Mobilization*, 487 U.S. 72, 79 (1988). "If the court

determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."

Page 2 - FINDINGS AND RECOMMENDATION

Fed. R. Civ. P. 12(h)(3).

Generally, subject-matter jurisdiction must be based either on the presence of complete

diversity between the parties, *see* 28 U.S.C. § 1332, or on the presence of an action arising under

federal law, *see* 28 U.S.C. § 1331.  The determination whether the case arises under federal law

is governed by the well-pled complaint rule, which provides that "federal jurisdiction exists only

when a federal question is presented on the face of the plaintiff's properly pleaded complaint."

*Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987), *citing Gully v. First Nat'l Bank*, 299 U.S.

109, 112-13 (1936).

### FACTUAL BACKGROUND

In support of their motion for summary judgment, filed June 28, 2011, Plaintiffs have

offered affidavits and other documentary evidence.  Defendant Covington has appeared in this

action, but has offered no response or evidence in opposition to plaintiffs' dispositive motion.

The following recital of facts constitutes my construal of those facts underlying the parties'

dispute that are material to my inquiry into the court's subject-matter jurisdiction over plaintiffs'

claims, and is based solely on the evidentiary record currently before the court.

Covington is the president and sole shareholder of ASAP, an Oregon corporation

headquartered in Oregon.  ASAP Flaggin', Inc. ("ASAP Flaggin'"), is a registered fictitious

business name for ASAP, and Covington is the authorized representative for ASAP Flaggin'.

ASAP entered into a Laborers Compliance Agreement (the "LCA") with the Oregon,

Southern Idaho, and Wyoming District Counsel of Laborers, pursuant to which ASAP was

required to make specified contributions to the plaintiff ERISA trusts on behalf of ASAP's

laborer employees.  In 2008, ASAP owed payments to the plaintiff ERISA trusts pursuant to the

LCA in the combined amount of $105,182.30.  In an apparent attempt to satisfy that obligation, on July 28, 2008, Covington signed a check on behalf of ASAP to the order of "Oregon laborers [*sic*] Trust" in the amount of $49,561.00, on September 9, 2008, Covington signed a check on behalf of ASAP Flaggin' to the order of "Oregon Labors [*sic*] Trust" in the amount of $32,798.94, and on November 9, 2008, Covington signed a check on behalf of ASAP Flaggin' to the order of "Oregon laborers [sic]" in the amount of $22,822.76.  Each of these three checks was dishonored by ASAP's bank for insufficient funds, and none of the three checks was ever subsequently honored.  ASAP's obligation to the plaintiff ERISA trusts remains due and owing.

Plaintiffs made written demand for payment in the amount of $105,182.30 on ASAP on October 15, 2009, attaching as exhibits to their demand copies of the three dishonored checks.  It does not appear that ASAP made any response to plaintiffs' demand.

On November 20, 2009, plaintiffs filed an action in federal court (the "2009 action") against ASAP, ASAP Flaggin', two other corporate entities apparently owned and operated by Covington, and Covington himself, although it does not appear that Covington was ever served with the complaint.  On April 19, 2010, Judge Haggerty entered a default money judgment against ASAP, ASAP Flaggin', and the other two corporate entities in the 2009 action, finding the corporate defendants jointly and severally liable in the following amounts:

1.      $105,182.30 as and for contributions owed and checks dishonored;

2.      $106,682.30 for statutory damages;

3.      $430.00 for costs necessarily incurred;

4.      Interest at the legal rate from the date of Judgment until paid.

On April 26, 2010, plaintiffs made written demand on the four corporate defendants in the total

amount of $212,294.60 on the basis of Judge Haggerty's default money judgment. It does not

appear that any of the corporate defendants made any response to plaintiffs' demand.

## ANALYSIS

As a preliminary matter, I note that plaintiffs do not assert that this court could exercise

diversity jurisdiction over their claims. Moreover, none of plaintiffs' allegations or evidentiary

submissions suggests the complete diversity of the parties. I thus conclude that there is no basis

for this court to assert diversity jurisdiction over plaintiffs' claims pursuant to 28 U.S.C. § 1332.

As to whether the court may properly exercise federal question jurisdiction over plaintiffs'

claims, or either of them, I note that plaintiffs' first claim – alleged against Covington on the

grounds that he is the maker of dishonored checks – arises under an Oregon statute, Or. Rev.

Stat. 30.701, rather than under any federal statute or the United States Constitution. This court

therefore may not exercise subject-matter jurisdiction over this action on the basis of plaintiffs'

Section 701 claim.

It is plaintiffs' position that the court may properly exercise federal question jurisdiction

over their second claim, styled as a claim for piercing the corporate veil. I note that in their

complaint, in their briefing, and at oral argument on their summary judgment motion, plaintiffs

have consistently affirmed that they do not seek to relitigate the merits of the claims decided in

their 2009 action, but rather seek to impose liability on Covington on a veil-piercing theory in

connection with the money judgment against ASAP that issued in the 2009 action. Plaintiffs'

position runs directly afoul of, *inter alia*, the United States Supreme Court's decision in *Peacock*

*v. Thomas*, 516 U.S. 349 (U.S. 1996).

In *Peacock*, the respondent was a former employee of an employer either wholly- or

majority-owned by the petitioner. The respondent had brought an ERISA action against his former employer for benefits due under the employer's pension benefits plan, and had obtained a money judgment therein. The employer appealed the judgment, which was ultimately affirmed. Following affirmation of the judgment, the respondent sought to collect on the judgment but was unsuccessful, in large part due to the actions of the petitioner in fraudulently conveying and otherwise milking assets from the employer. The respondent thereafter brought an action against the petitioner alleging a claim styled as "Piercing the Corporate Veil Under ERISA and Applicable Federal Law," by and through which he sought to hold the petitioner liable on the money judgment already obtained against the employer. The respondent was successful at the district court level, and the Court of Appeals affirmed judgment in the respondent's favor. However, the Supreme Court ultimately reversed on the grounds that the district court below had lacked subject-matter jurisdiction over the respondent's claim.

The court first rejected the respondent's suggestion that the respondent could properly state a claim for piercing the corporate veil under ERISA. *See Peacock*, 516 U.S. at 353 ("We are not aware of, and [respondent] does not point to, any provision of ERISA that provides for imposing liability for an extant ERISA judgment against a third party"), *citing Mackey v. Lanier Collection Agency & Service, Inc.*, 486 U.S. 825, 833 (1988) ("ERISA does not provide an enforcement mechanism for collecting judgments . . ."). The court expressly rejected the theory that Section 502(a)(3) of ERISA, which authorizes civil actions to redress violations of ERISA or the terms of an ERISA plan, could give rise to such a claim, noting that the respondent did not allege that the petitioner (as opposed to the petitioner's purported corporate alter ego, the employer) had violated any ERISA provisions, but rather that the petitioner's wrongdoing had

Page 6 - FINDINGS AND RECOMMENDATION

been in his failure to respect the corporate form in his relations with the employer. *See id.*

"Section 502(a)(3) 'does not, after all, authorize "appropriate equitable relief" *at large*, but only

"appropriate equitable relief" for the purpose of "redress[ing any] violations or . . . enforcing any

provisions" of ERISA or an ERISA plan.'" *Id., quoting Mertens v. Hewitt Associates*, 508 U.S.

248, 253 (1993) (emphasis and modifications original).

The court next rejected the respondent's theory that a veil-piercing "claim" constituted an

independent cause of action capable of supporting exercise of subject-matter jurisdiction in the

first instance:

> Moreover, [respondent's] veil-piercing claim does not state a cause of action under
> ERISA and cannot independently support federal jurisdiction. Even if ERISA
> permits a plaintiff to pierce the corporate veil to reach a defendant not otherwise
> subject to suit under ERISA, **[respondent] could invoke the jurisdiction of the
> federal courts only by independently alleging a violation of an ERISA
> provision or term of the plan. Piercing the corporate veil is not itself an
> independent ERISA cause of action, "but rather is a means of imposing
> liability on an underlying cause of action."** 1 C. Keating & G. O'Gradney,
> Fletcher Cyclopedia of Law of Private Corporations § 41, p. 603 (perm. ed. 1990).
> Because [respondent] alleged no "underlying" violation of any provision of
> ERISA or an ERISA plan, neither ERISA's jurisdictional provision, 29 U.S.C. §
> 1132(e)(1), nor 28 U.S.C. § 1331 supplied the District Court with subject-matter
> jurisdiction over this suit.          .

*Id.* at 353-354 (emphasis supplied; footnote omitted). In addition, the court expressly rejected the

respondent's argument that the district court below could have exercised subject-matter

jurisdiction over the respondent's attempt to impose liability on the petitioner on a veil-piercing

theory based on jurisdiction ancillary to the federal question jurisdiction the court properly

enjoyed over the previous action against the employer, in which the money judgment issued. *See

id.* at 354-355. The court reasoned as follows:

"Ancillary jurisdiction typically involves claims by a defending party haled into

court against his will, or by another person whose rights might be irretrievably lost unless he could assert them in an ongoing action in a federal court." *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 376, 57 L. Ed. 2d 274, 98 S. Ct. 2396 (1978). Ancillary jurisdiction may extend to claims having a factual and logical dependence on "the primary lawsuit," *ibid.*, but that primary lawsuit must contain an independent basis for federal jurisdiction. The court must have jurisdiction over a case or controversy before it may assert jurisdiction over ancillary claims. *See Mine Workers v. Gibbs*, 383 U.S. 715, 725, 16 L. Ed. 2d 218, 86 S. Ct. 1130 (1966). **In a subsequent lawsuit involving claims with no independent basis for jurisdiction, a federal court lacks the threshold jurisdictional power that exists when ancillary claims are asserted in the same proceeding as the claims conferring federal jurisdiction.** *See Kokkonen, supra*, 511 U.S. at 380-381; *H. C. Cook Co. v. Beecher*, 217 U.S. 497, 498-499, 54 L. Ed. 855, 30 S. Ct. 601 (1910). Consequently, **claims alleged to be factually interdependent with and, hence, ancillary to claims brought in an earlier federal lawsuit will not support federal jurisdiction over a subsequent lawsuit.** The basis of the doctrine of ancillary jurisdiction is the practical need "to protect legal rights or effectively to resolve an entire, logically entwined lawsuit." *Kroger*, 437 U.S. at 377. **But once judgment was entered in the original ERISA suit, the ability to resolve simultaneously factually intertwined issues vanished.** As in *Kroger*, "neither the convenience of litigants nor considerations of judicial economy" can justify the extension of ancillary jurisdiction over [respondent's] claims in this subsequent proceeding. *Ibid.*

In any event, there is insufficient factual dependence between the claims raised in [respondent's] first and second suits to justify the extension of ancillary jurisdiction. [Respondent's] factual allegations in this suit are independent from those asserted in the ERISA suit, which involved . . . [the employer's] status as [a] plan fiduciar[y] and [its] alleged wrong-doing in the administration of the plan. The facts relevant to this complaint are limited to allegations that [the petitioner] shielded [the employer's] assets from the ERISA judgment long after [the employer's] plan had been terminated. The claims in these cases have little or no factual or logical interdependence, and, under these circumstances, no greater efficiencies would be created by the exercise of federal jurisdiction over them. *See Kokkonen, supra*, at 380.

*Id.* at 355-356 (emphasis supplied).

Finally, the court expressly rejected the theory that the district court below could have exercised ancillary subject-matter jurisdiction over the respondent's claim under the court's ancillary enforcement jurisdiction. *See id.* at 356-359. The court noted that it had "never

Page 8 - FINDINGS AND RECOMMENDATION

authorized the exercise of ancillary jurisdiction in a subsequent lawsuit to impose an obligation

to pay an existing federal judgment on a person not already liable for that judgment," and noted

that, to the contrary, it had consistently rejected attempts to do so. *Id.* at 357. The court

ultimately held that:

> When a party has obtained a valid federal judgment, only extraordinary
> circumstances, if any, can justify ancillary jurisdiction over a subsequent suit like
> this. To protect and aid the collection of a federal judgment, the Federal Rules of
> Civil Procedure provide fast and effective mechanisms for execution. In the event
> a stay is entered pending appeal, the Rules require the district court to ensure that
> the judgment creditor's position is secured, ordinarily by a supersedeas bond. The
> Rules cannot guarantee payment of every federal judgment. But as long as they
> protect a judgment creditor's ability to execute on a judgment, the district court's
> authority is adequately preserved, and **ancillary jurisdiction is not justified over
> a new lawsuit to impose liability for a judgment on a third party.**

*Id.* at 359 (emphasis supplied; footnotes omitted).

I see nothing in the case now before the court to distinguish it from the situation

addressed by the *Peacock* court. I therefore conclude that this court lacks subject-matter

jurisdiction to consider the claims brought by the plaintiff trusts. The plaintiffs must resort to the

Oregon courts for the relief they seek.

## CONCLUSION

For the reasons set forth above, I recommend that the claims asserted in this action be

dismissed for lack of subject-matter jurisdiction. Plaintiffs' action should be dismissed in its

entirety, and a final judgment should be prepared. All pending motions, including plaintiffs'

pending motion for summary judgment, should be denied as moot.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any,

Page 9 - FINDINGS AND RECOMMENDATION

are due fourteen (14) days from service of the Findings and Recommendation.  If no objections

are filed, then the Findings and Recommendation will go under advisement on that date.

     If objections are filed, then a response is due fourteen (14) days after being served with a

copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings

and Recommendation will go under advisement.

     Dated this 13th day of October, 2011.

Honorable Paul Papak
United States Magistrate Judge

Page 10 - FINDINGS AND RECOMMENDATION